

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

FRANKIE COOK,

Defendant.

20-MR- 98

---

## GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REVOKE THE MAGISTRATE JUDGE'S DETENTION DECISION AND ORDER

The United States of America by and through its attorneys, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and Charles E. Watkins, Jr., Assistant United States Attorney, hereby file this Memorandum of Law in Support of its Motion for Review of the Honorable Jeremiah J. McCarthy's, United States Magistrate Court, Determination on Detention.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On March 3, 2020, Judge McCarthy signed a Criminal Complaint under 20-mj-1003, charging the defendant, FRANKIE COOK with possession with intent to distribute, and to distribute, N-phenyl1-N-[1-(2-phenylethyl)-4-piperdinyl] propanamide (fentanyl) a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B), possession of a firearm by a convicted felon, in violation of Title 18 United States Code, Section 922(g), and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c). See Exhibit A. On March 13, 2020, an Agent from the Federal Bureau of Investigation ("FBI") effectuated the arrest

warrant on the defendant. The defendant appeared before Judge McCarthy for his Initial Appearance on March 16, 2020 pursuant to a Writ of Habeas Corpus ad Prosequendum. (Dkt. under 4 20-mj-1003). At the Initial Appearance, the government moved to detain the defendant, pursuant to Title 18, United States Code, Section 3142(f)(1)(C), since the defendant had been charged with an offense for which the maximum term of imprisonment is 10 years or more as prescribed in the Controlled Substances Act, was charged with a crime involving a firearm, and was currently under supervision by Erie County. The defendant waived his right to a preliminary hearing. The Court held the detention hearing on this date. After evidence was proffered to the Court, the hearing was continued to March 18, 2020. On March 18, 2020, Judge McCarthy issued an order releasing the defendant "in the interim" while leaving the detention hearing open. (Dkt. 7 under 20-mj-1003). While the Court never issued a ruling on the detention motion of the government, as would be in concert with the law, the fact that the defendant was ordered released leads the government to believe that its motion for detention of the defendant was denied.

At the detention hearing, the government proffered that the defendant posed a danger to the community and operated as a flight risk.[1] The government asked the Magistrate Court to take into account the rebuttable presumption that the defendant was a "risk of flight" and "danger to the community," as set forth in Title 18, United States Code, Section 3142(e)(3)(A), since the defendant had been charged with a Controlled Substances Act offense for which the maximum term of imprisonment is more than 10 years. The government also

---

[1] The government is not yet in possession of the complete transcript of the proceedings and requests to supplement this motion, should it become necessary, after the filing of the transcript.

set forth the Title 18, United States Code, Section 3142(g) factors that warranted the defendant's pretrial detention. A discussion of those factors follows.

On February 11, 2020, the defendant was placed on probation in Erie County for a felony conviction. 15 days later, on February 26, 2020 Erie County Probation was present at 484 Dartmouth Avenue, Buffalo, New York, 14215 for a notification session. During this notification session, the defendant led probation to the basement of the home, where probation observed a table area of the basement with surgical masks, rubber gloves, and plastic baggies along with the probation paperwork of the defendant. The probation officer also noticed a door hidden behind a large speaker in the basement. This led probation to perform a search of the basement.

At this point, the occupants of the home were secured[2] and a search was conducted. The speaker in the basement was moved and it revealed a door that led to a small corridor. Inside that corridor was a small black safe. Probation tried to open the safe. The safe was tipped over and stood back up. The defendant was asked what the code for the safe was. He responded that there was not a combination, but that it opened with a key. When asked about the key, the defendant responded that he did not have the key. An Erie Sheriff's Deputy was able to open the safe. Inside the safe, law enforcement officers found suspected fentanyl, a 9mm firearm, boxes of ammunition, and baggies[3].

---

[2] The defendant, his girlfriend, Shawntee Ellison, and their two children, aged 3 and 6 were located in the home.
[3] The fentanyl was not field tested for officer safety purposes, but has since been tested and returned a positive result for fentanyl weighing approximately 240 grams; the firearm was stolen out of Pennsylvania and the plastic baggies were the same brand and type found in the basement with the surgical masks and gloves.

The defendant denied knowledge of these items and said that the safe was there when they moved in. It should be noted that the defendant and his family moved into the home on January 1, 2020. The firearm located in the safe was reported stolen on January 17, 2020. The government proffered this information, along with the fact that the defendant was currently on probation and being supervised by Erie County.

When presented with this information, Judge McCarthy was not moved and ordered the defendant released. While the Court did not make a finding as to whether the defendant was either a flight risk or a danger to the community, the court did acknowledge that there was a rebuttable presumption in this case (in favor of detention). However, the Court did not make a finding of whether or not that presumption was rebutted by the defendant, it simply ordered the release of the defendant with conditions[4] on a $20,000 signature bond to be executed by his girlfriend. There was colloquy between Shawmtee Ellison and the court. Shawntee Ellison acknowledged that she understood the risk of executing a signature bond for the defendant to the satisfaction of the Court.

In response to this ruling, the United States Probation Office (USPO) expressed an objection to the defendant being released to 484 Dartmouth Avenue because of the presence of firearms in the home. The Court ordered the USPO to search the residence prior to approving it for the defendant to live there on pretrial release.

---

[4] The defendant was placed on home detention with electronic monitoring.

It has come to the government's attention that when the USPO performed this court ordered search on March 20, 2020, a 9mm round of ammunition in the upstairs bedroom of the home. When USPO renewed their objection to the defendant's release and brought this to the attention of Judge McCarthy, he was not swayed and repeated to the USPO that the defendant was to be released.

Further, while investigating this matter further, the government received recorded custodial interviews of the defendant and his girlfriend. During the custodial interview of the defendant, he asked to speak with his girlfriend. The law enforcement officers permitted the defendant and his girlfriend to speak to each other in the interview room where the defendant was being interviewed. During this interview, the defendant can be heard telling his girlfriend not to say anything to the police and then telling her that the officers must have cracked his safe because it was closed.

Because there are no conditions, including those set by the Magistrate Court, that can assure the defendant's return to court or the safety of the community, the government now provides this memorandum in support of its motion for review of the decision and order releasing the defendant from custody.

## II.    STANDARD OF REVIEW

Review of a magistrate judge's release order is de novo. "[W]here a defendant is ordered released by a magistrate judge, the government may, under 18 U.S.C. § 3145(a)(1), move for revocation of the release order before the district court. Upon such motion, the

district court must perform a <u>de novo</u> review of the magistrate judge's release order." <u>United States v. Boorman</u>, 130 F. Supp. 2d 394, 398 (W.D.N.Y. 2001) (citing <u>United States v. Leon</u>, 766 F.2d 77, 80 (2d Cir.1985)). In <u>United States v. Leon</u>, the Second Circuit held that a district court should "not simply defer to the judgment of the magistrate, but reach its own independent conclusion." <u>Leon</u>, 766 F.2d 77, 80 (2d Cir.1985); <u>see also</u> <u>United States v. Colombo</u>, 777 F.2d 96, 100 (2d Cir. 1985). The reviewing district court is also not limited to the record made at the magistrate court. Rather, the Court may take additional evidence or conduct a new evidentiary hearing altogether. "When making its <u>de novo</u> review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." <u>Boorman</u>, <u>supra</u>, 130 F. Supp. 2d at 398; <u>see also</u> <u>Colombo</u> 777 F.2d 96, 98 (2d Cir. 1985).

### III.    GOVERNING STANDARDS

When the government's motion for detention is based upon the defendant's dangerousness, it "has the burden of establishing defendant's dangerousness by 'clear and convincing evidence.'" <u>United States v. Chimurenga</u>, 760 F.2d 400, 403 (2d Cir. 1985); <u>see also</u> 18 U.S.C. § 3142(f). When the government's motion for detention is based upon the defendant's risk of flight, the "government's burden of proof . . . is not by clear and convincing evidence, but rather by a preponderance of the evidence." <u>Chimurenga</u>, 760 F.2d at 405.

When there is probable cause to believe the defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, it is presumed that there are no conditions or combinations of conditions that

will reasonably assure the appearance of the person and the safety of the community. 18 U.S.C. § 3142(e)(3)(A).

"In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). See also United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Mercedes, 254 F.3d at 436.

In making a determination as to whether a defendant should be released, the Court must consider the factors enumerated under 18 U.S.C. § 3142(g). The four factors are, in relevant part:

    (1)    the nature and circumstances of the offense charged;

    (2)    the weight of the evidence against the person

    (3)    the history and characteristics of the person including

        (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

7

> > (B)    whether, at the time of the current offense or arrest, the person
> >         was on probation, on parole, or on other release pending trial,
> >         sentencing, appeal, or completion of sentence...
>
> > (4)    the nature and seriousness of the danger to any person or the community that
> >         would be posed by the person's release

18 U.S.C. § 3142(g).


Significantly, when the government seeks to establish that a defendant is a danger, it need not show a record of violence or dangerous conduct. "Although a prior record of violence eases the government's burden of showing dangerousness, it is not essential." United States v. Rodriguez, 950 F.2d 85, 88–89 (2d Cir. 1991). Moreover, the Second Circuit has long established that "it is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'" United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985). See also United States v. Acosta-Tavera, 697 F. App'x 927, 930 (10th Cir. 2017) ("[T]he risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community."). A charge such as the one the defendant is charged with carries a high penalty that can give rise to strong motives for flight and, accordingly, supports pretrial detention. See United States v. Sabhnani, 493 F.3d 63, 76 (2d Cir. 2007); see also United States v. Duranseau, 26 F.3d 804, 808 (8th Cir. 1994) (agreeing that offense punishable by up to ten years in prison constitutes a serious offense); United States v. Melguizo, 824 F.2d 370, 371 (5th Cir. 1987) ("We find that a possible sentence of ten years is also sufficient indication that an offense is serious.").


Although the evidence presented at the detention hearing was not as extensive as the information that follows, primarily due to the fact that the information presented should have

been sufficient to warrant detention, the government now sets forth further basis for the defendant's detention. As the law allows, the Government asks the Court to consider this additional evidence in support of its motion. See Boorman, supra, 130 F. Supp. 2d at 398. Moreover, due to the ongoing nature of this investigation, the government requests that the Court allow the government to supplement this memorandum at a later date to provide the Court with updated investigative information.

## IV.   ARGUMENT

The defendant is both a flight risk and a danger to the community. Upon releasing the defendant, the Magistrate Court declined to address a single factor as set forth under Title 18, United States Code, Section 3142(g). Further, the Magistrate Court did not fully account for the applicable presumption that the defendant poses a danger to the community and is a flight risk. Similarly, the defendant failed to meet his burden of production to overcome the presumption under § 3142(e). This presumption is significant. The Court should, therefore, revoke the Decision and Order of the Magistrate Court.

**1)   First Factor: Nature and Circumstances of Charge**

On February 26, 2020, the defendant possessed a significant quantity of fentanyl. The amount possessed has an approximate street value of $24,000. The defendant was also in possession of a firearm and several rounds of ammunition. The seized evidence makes clear that the nature and circumstances of this offense are serious.

Accounting for the seizure of narcotics, with Criminal History Category of I, without acceptance of responsibility, based upon a total offense level of 34, the defendant is facing a Guidelines sentencing range of 151 to 188 months with an additional consecutive 60 months for the possession of the firearm.

Given the nature of the proof against the defendant and the significant quantity of fentanyl the defendant trafficked, the threat posed by the defendant to the community cannot be ignored in determining the defendant's danger to any other person or the community as a whole. Further, the significant sentence the defendant faces is an important factor in determining the defendant's risk of flight. See United States v. Shelikhov, 468 Fed. Appx. 54 (2d Cir. 2012) (finding that a 20-year maximum sentence gave rise to a "strong motive to flee . . ."). Finally, the defendant's possession of a firearm serves to further demonstrate the defendant's danger to the community. See United States v. Dillard, 214 F.3d 88, 93 (2d Cir. 2000 (noting that "firearms are conventionally regarded as essential equipment of a criminal engaged in violent crime."); and United States v. Bacerra, 97 F.3d 669, 671-672 (2d Cir. 1996) (discussing how firearms are "tools of the trade" for drug dealers).

Given these facts, the nature and circumstances of the charge, the sentence associated this charged offense, the defendant's possession of a firearm, and the existing presumption, there are no conditions that can assure the safety of the community and the defendant's appearance if the defendant is released.

2)    **Second Factor:  Weight of Evidence**

The weight of the evidence against the defendant is considerably strong. The defendant's probation paperwork was on the same shelf as surgical masks, gloves, and plastic baggies consistent with evidence of drug packaging. The safe where the drugs and gun were located were in the basement of the defendant's home. A basement that the defendant told officers that only he accessed in the home and referred to as his "man cave" when speaking to Erie County Probation about the area, and where his dog was located. The defendant told probation that he didn't want the dog to have human contact because he wanted it to be a guard dog. Because the evidence of the defendant's guilt is considerably strong, this prong also weighs in favor of the defendant's detention.

3)    **Third Factor: History and Characteristics of the Defendant**

The third factor also weighs in favor of the defendant's detention. The defendant has a previous conviction from February 2020 for a firearms charge. The defendant received a probationary sentence for this charge. On his first visit with probation, he was arrested for a violation. The defendant did not even last one month on probation before committing a violation.

The defendant also has a lack of employment history.

4)    **Fourth Factor: Nature and Seriousness of the Danger to Any Person or the Community**

As detailed above, the serious nature of the defendant's narcotics trafficking poses a danger to the community. Even if there were no evidence that the defendant posed a threat to

individuals in the community, the Second Circuit has established that "it is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'" Leon, supra, 766 F.2d at 81. See also United States v. Acosta-Tavera, 697 F. App'x 927, 930 (10th Cir. 2017) ("[T]he risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community.").

Simply, the defendant poses a danger the community. See United States v. Leon, supra, 766 F.2d at 81 (danger to the community includes "the harm to society caused by [the significant risk of continued] narcotics trafficking"). The posting of $20,000 signature bond, along with electronic monitoring, will not mitigate that danger.

**5)    The Bonds Imposed by the Magistrate Court are Insufficient to Protect Society or Assure the Defendant's Appearance**

The Magistrate Court allowed the defendant's release upon the defendant's girlfriend, Shawntee Ellison, signing a $20,000 signature bond. This signature bond will not adequately assure the defendant's appearance nor will these bonds adequately protect society for multiple reasons.

For one, should the defendant violate a term or condition of his release, there is no evidence that Shawntee Ellison would be capable of paying any amount towards the $20,000 signature bond. Because there is no assurance that Ms. Ellison would be capable of paying the bond should the defendant violate a condition of release, the signature bond lacks sufficient collateral. See United States v. Malizio, 2013 U.S. Dist. LEXIS 148324, *9-15

(W.D.N.Y. Oct. 15, 2013) (finding that a signature bond failed to operate as sufficient collateral). The bond is merely a hollow gesture, creating the appearance that Ms. Ellison is risking assets, when, in fact, she is not.

Even assuming a judgment can be entered and money can be secured from Ms. Ellison, a total of $20,000 is woefully inadequate to secure the defendant's appearance and protect society due to the nature of the charges. Electronic monitoring, along with this small collateral, will not mitigate the defendant's danger to the community or risk of flight. <u>See</u> <u>United States v. Ellison</u>, 2018 U.S. Dist. LEXIS 28787, *11 (W.D.N.Y. Feb. 22, 2018) (finding that "electronic monitoring while on home detention or home incarceration, even with relatives posting financial security, will not eliminate the specific danger that the defendant poses to the community.").

<u>CONCLUSION</u>

The release of the defendant poses a risk of flight and a serious risk of danger to the community. No condition or combination of conditions can lessen this risk to a point where the defendant's appearance, or the safety of the community or other individuals, can be reasonably assured. The posting of a $20,000 signature bond, along with electronic monitoring, are insufficient assurances. For the reasons stated above, the government respectfully requests that the District Court revoke the Magistrate Court's decision, and order the defendant be detained pending trial. Additionally, because the government is not in receipt of the transcript and because this investigation is ongoing, the government requests the

opportunity to supplement this memorandum at a later date to provide the Court with updated investigative information.

DATED:  Buffalo, New York, March 20, 2020.

JAMES P. KENNEDY, JR.
United States Attorney

BY:

CHARLES E. WATKINS, JR.
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843-5708
Charles.Watkins@usdoj.gov